1
2
3
4
5
6
7
8
## UNITED STATES DISTRICT COURT

9
## SOUTHERN DISTRICT OF CALIFORNIA

10
CEZAR CARVAJAL,

CASE NO. 10CV2319-GPC(MDD)

11
                                Plaintiff,

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

12
    vs.

13
PRIDE INDUSTRIES, INC.;
DOES 1-10,

[Dkt. No. 32.]

14
15
                                Defendants.

16
        Before the Court is Defendant Pride Industries' motion for summary judgment,

17
or in the alternative, partial summary judgment.   Plaintiff opposed and Defendant

18
replied.  Based on the briefs, supporting documents, and the applicable law, the Court

19
GRANTS in part and DENIES in part Defendant's motion for summary judgment.

20
### Background

21
        On November 9, 2010, Plaintiff, proceeding *pro se* at the time, filed a complaint

22
alleging "Discrimination, Retaliation, Falure (sic) to Acomidate (sic) under Title - 7

23
(See Attached)" along with a motion to proceed *in forma paueris*. (Dkt. No. 1.)  The

24
Court granted Plaintiff's motion for leave to proceed *in forma pauperis* but *sua sponte*

25
dismissed the complaint without prejudice for failing to state a claim.  (Dkt. No. 4.)

26
On January 31, 2011, Plaintiff's attorney filed a notice of appearance.  (Dkt. No. 10.)

27
With new counsel, Plaintiff filed a second amended complaint alleging numerous

28
causes of action based on his alleged wrongful termination from Defendant Pride

Industries on July 3, 2008.  (Dkt. No. 14.)  Plaintiff alleges nine causes of action:

1)   First Cause of Action - Violation of Title I of the Americans with Disabilities Act of 1990 ("ADA");

2)   Second Cause of Action - Violation of Title VII of the Civil Rights Act of 1964 ("Title VII");

3)   Third Cause of Action - Race Discrimination in Violation of California Government Code section 12900, *et seq*.;

4)   Fourth Cause of Action - Wrongful Termination in Violation of Public Policy;

5)   Fifth Cause of Action - Breach of Contract;

6)   Sixth Cause of Action - Breach of Implied Covenant of Good Faith and Fair Dealing;

7)   Seventh Cause of Action - Negligence;

8)   Eighth Cause of Action - Defamation/Slander Per Se; and

9)   Ninth Cause of Action - Intentional Infliction of Emotional Distress.

Defendant moves for summary judgment on all causes of action, or alternatively, partial summary judgment.  (Dkt. No. 32.)  Plaintiff filed an opposition on December 21, 2013.  (Dkt. Nos. 34, 35.)  Defendant filed a reply on January 11, 2013.  (Dkt. No. 37.)

**Factual Background**

Defendant Pride Industries, Inc. is a non-profit organization whose mission is to create jobs for people with disabilities. (Dkt. No. 32-5, Oliveira Decl. ¶ 2.)  It operates a shipboard provisioning contract in San Diego with the Navy under the federal AbilityOne program which requires that most of the work be done by employees with disabilities.  (Id. ¶ 2.)  Plaintiff began working at Pride as an on-call laborer at its AbilityOne Shipboard Provisioning contract in San Diego from September 7, 2004 through July 2, 2008.  (Dkt. No. 35, Pl's Response to D's Separate Statement of Uncontroverted Facts at 4.)

At this point, the facts diverge.  According to Plaintiff, he claims he was

ultimately terminated because he brought forth complaints about sexual harassment, abuse to disabled employees, not being allowed meal breaks or lunch breaks, being required to fake a mental disability in order to keep his job, Defendant failing to accommodate his disability, discrimination and being harassed and retaliated against for disclosing illegal conduct on the job. (Dkt. No. 35-23, Carvajal Decl. ¶ 3.) He was retaliated against, discriminated against, and ultimately terminated because he refused to provide a mental disability and he educated disabled employees about their rights. (Id. ¶ 6.) He also states the he was discriminated against because he was Latino because his supervisor, Gregory Pomrenke, would pick non-Latinos instead of available Latinos to work. (Id. ¶10.) He states that he joked around with John Mears, a fellow employee, on the job and outside of work. (Id.) Supervisors would joke around and call people names. (Id.) Pomrenke joked around all the time but his jokes were malicious while Plaintiff's and John's jokes were friendly. (Id. ¶ 8.)

Plaintiff was not hired as a disabled employee. (Id. ¶ 2.) Plaintiff alleges that Defendant mistreated mentally disabled employees. (Id. ¶ 12.) Pride would place mentally disabled employees in freezers for long periods of time without proper jackets; it would not allow employees to use the restroom and they would wet their pants; and it would not pay mentally disabled individuals for all the time they worked. (Id.) When Plaintiff raised these issues to Pomrenke, he was told to mind his own business. (Id. ¶ 14.)

Pomrenke also told Plaintiff he had to see Defendant's doctors so he could come up with a mental disability. (Id. ¶ 17.) Plaintiff told him that he did not have a mental disability and he would not fake a disability because it was illegal. (Id.) When Plaintiff mentioned his knee disability, Pomrenke said a knee disability would not suffice and forced him to find a mental disability. (Id.) Plaintiff states that employees were being sent to the office to be coached on how to respond to questions so that employees would be given a mental disability. (Id.) When Plaintiff asked for paperwork so that he could go to "California Disability" and get advise, Pomrenke did

not like that. (Id.)  As a result, Plaintiff received less work, was physically harassed and abused. (Id.)  In early 2008, Pomrenke asked again if Plaintiff would go to the office and help them write up a mental disability. (Id.)  After he refused to give a mental disability, Pomrenke turned people against Plaintiff and said Plaintiff was a "queer" and went to the gay pride parade. (Id.)  He then began receiving warnings and writeups. (Id.)  Before late 2007 and early 2008, he never received any writeups. (Id.)

On July 1, 2008, Plaintiff and other employees were going onto a ship and carried some medicine in his hand. (Id. ¶32.)  Patrick Garvey, a work lead, said that Plaintiff could not have the medicine in his hand. (Id.)   Plaintiff put the medicine in his pocket but Garvey said he had to put it in the van. (Id.)  When Plaintiff told Garvey he needed the medicine for his knee and to stop harassing him. (Id.)  Garvey told him to leave for insubordination. (Id.)  This was before he had used profanities. (Id.)  Plaintiff asked for a ride back so he could complain to the office but Garvey said he had to walk back. (Id.)  Then Plaintiff said "F– you, leave me alone." (Id.)  He states that there were many instances when they were told to walk home from North Island which is about a two and a half mile walk. (Id.)

Plaintiff states that Garvey incorrectly stated that Plaintiff said "F– you and I won't do it" not, "F– you, leave me alone." (Id. ¶ 33.)  On July 1, 2008, Pomrenke told him he was suspended for three days pending an investigation. (Id. ¶ 34.)  Pomrenke told Plaintiff to be at his office at 3 p.m. on Friday.  (Id.)  On Friday, he came in but Pomrenke was not there and was told by Isa, that he had been terminated and gave him his paycheck. (Id.)

According to Defendant, Pride's managers, including Gregory Pomrenke, are trained on disability awareness and are expected to work closely with the counselors to ensure any necessary accommodations for its disabled employees are provided. (Dkt. No. 32-5, Oliveira Decl. ¶ 3.)  Greg Pomrenke was Plaintiff's manager. (Dkt. No. 32-6, Pomrenke Decl. ¶ 1.)  Plaintiff's work was predominantly on naval ships at the Naval Base San Diego.  (Id. ¶ 2.)   While employed, Pomrenke received a few

complaints from some of his co-workers regarding comments Plaintiff made such as making "gay comments", calling other employees "queers" and pointing at miscellaneous objects and people and calling them "gay." (Id. ¶ 3.) He stated that he asked Plaintiff if he had a disability but never demanded that he make up a disability. (Id. ¶ 4.) After Plaintiff informed him about his knee injury, he was no longer required to work on ladders and if he had difficulty walking, he was allowed to work on less physically demanding tasks. (Id. ¶ 5.)

Patrick Garvey is a work lead for Defendant. (Dkt. No. 32-4, Garvey Decl. ¶ 1.) On July 1, 2008, Garvey was the work lead of a crew of laborers, including Plaintiff, that were to load three pallets of food onto a naval ship named the "Lake Champlain." (Id. ¶ 3.) Garvey drove the crew of laborers to the location in a company van. (Id.) The job was expected to take an hour or less so he told everyone to leave their bags in the van. (Id.) Plaintiff tried to get on the ship holding his white plastic bag. (Id.) Garvey told Plaintiff that he could not take the bag on board and that he needed to leave it in the van. (Id.) In response, Plaintiff said "F — you." (Id.)

Garvey then called his supervisor, Adam Noble, to explain the situation. (Id. ¶ 4.) Noble said to tell Plaintiff to leave his bag in the van or go home. (Id.) Garvey told Plaintiff this and Plaintiff again said "F– you." (Id.) When he called Noble again, Noble told him to send Plaintiff to see Pomrenke. (Id.) Pomrenke suspended Plaintiff pending investigation and after speaking with Mr. Garvey, he terminated Plaintiff effective July 2, 2008 for insubordination. (Dkt. No. 32-6, Pomrenke Decl. ¶ 8.)

**A.    Legal Standard for Motion for Summary Judgment**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

1  moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact

2  is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc.,

3  477 U.S. 242, 248 (1986).

4        The moving party bears the initial burden of demonstrating the absence of any

5  genuine issues of material fact. Celotex Corp., 477 U.S. at 323. The moving party can

6  satisfy this burden by demonstrating that the nonmoving party failed to make a

7  showing sufficient to establish an element of his or her claim on which that party will

8  bear the burden of proof at trial. Id. at 322-23. If the moving party fails to bear the

9  initial burden, summary judgment must be denied and the court need not consider the

10  nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60

11  (1970).

12        Once the moving party has satisfied this burden, the nonmoving party cannot rest

13  on the mere allegations or denials of his pleading, but must "go beyond the pleadings

14  and by her own affidavits, or by the 'depositions, answers to interrogatories, and

15  admissions on file' designate 'specific facts showing that there is a genuine issue for

16  trial.'" Celotex, 477 U.S. at 324. If the non-moving party fails to make a sufficient

17  showing of an element of its case, the moving party is entitled to judgment as a matter

18  of law. Id. at 325. "Where the record taken as a whole could not lead a rational trier

19  of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita

20  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In making this

21  determination, the court must "view[] the evidence in the light most favorable to the

22  nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). The Court

23  does not engage in credibility determinations, weighing of evidence, or drawing of

24  legitimate inferences from the facts; these functions are for the trier of fact. Anderson,

25  477 U.S. at 255.

26  **B.    Federal Enclave Doctrine as to Third, Fourth and Ninth Causes of Action**

27        Defendant argues that Plaintiff's third, fourth and ninth state law causes of action

28  for race discrimination, wrongful termination in violation of public policy, and

intentional infliction of emotional distress are barred under the federal enclave doctrine.  Plaintiff argues that since these state law claims have a federal cause of action equivalent, they should not be dismissed.  Moreover, if these state law causes of action are barred, Plaintiff seeks permission to amend his complaint to assert federal causes of action for these state law claims.

Article 1, Section 8, Clause 17 of the United States Constitution grants Congress the power to "exercise exclusive legislation in all cases whatsoever" over all places purchased with the consent of a state "for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings."  U.S. Const. art. 1, § 8, cl. 17.  The power to exercise "exclusive legislation" holds the same meaning as "exclusive jurisdiction." Surplus Trading Co. v. Cook, 281 U.S. 647, 652 (1930). Exclusive jurisdiction "assumes the absence of any interference with the exercise of the functions of the Federal Government and . . . debar[s] the State from exercising any legislative authority, including its taxing and police power, in relation to the property and activities of individuals and corporations within the territory." Silas Mason Co. v. Tax Comm'n of Wash., 302 U.S. 186, 197 (1937).  To obtain exclusive jurisdiction, the state must also, by consent or cession, transfer jurisdiction to the United States.  Id. at 197.

"Only federal law applies on federal enclaves (except to the extent Congress has provided otherwise.)"  Snow v. Betchel Const., Inc., 647 F. Supp. 1514, 1521 (C.D. Cal. 1986).  Preexisting state law not inconsistent with federal policy remains in force until altered by national legislation.  Pacific Coast Dairy v. Dept. of Agriculture, 318 U.S. 285, 294 (1943).

Plaintiff does not dispute that the relevant events occurred on a federal enclave.[1]

---

[1] According to Plaintiff, he worked at the Navy Base San Diego or North Island or the Submarine pier.  (Dkt. No. 35–23, Carvajal Decl. ¶ 27.)  He also states that occasionally he would work at the B Street Pier, which is not considered part of the Navy Base.  (Id.)  North Island, where the alleged incident leading to his termination is a federal enclave.  See Moore v. R.E. Straite Eng'g, Inc., 07cv718-JM(WMC), 2008 WL 5412423, at *1 (S.D. Cal. Dec. 26, 2008).  In opposition, Plaintiff does not object

1    (Dkt. No. 32-2, D's Request for Judicial Notice, Ex. 1.)  The Naval Base San Diego,

2    formerly known as The Destroyer Base, became a federal enclave on February 23, 1922

3    pursuant to General Order No. 78 of the Navy Department and the State of California

4    authorized the transfer of land.  (Id., Exs 1. 2.)  Under the federal enclave doctrine,

5    state laws have no effect on federal enclaves unless they preexisted the surrender of

6    sovereignty and are not inconsistent with the laws of the United States or with the

7    government use for which the property was acquired.  See Stiefel v. Bechtel Corp., 497

8    F. Supp. 2d 1153, 1156 (S.D. Cal. 2007) (citations omitted).  Any state law in existence

9    prior to 1922 remains in force; however, any state law promulgated after 1922 is barred

10   by the federal enclave doctrine.  See id.

11       The state law tort of intentional infliction of emotional distress was first

12   recognized in California in 1950.  Bowden v. Spiegel, Inc., 96 Cal. App. 2d 793

13   (1950); Richardson v. Pridmore, 97 Cal. App. 2d 124 (1950).  The common law claim

14   of wrongful termination in violation of public policy was first recognized in California

15   in 1959.  Petermann v. Int'l Brotherhood of Teamsters, 174 Cal. App. 2d 184, 188

16   (1959).  In addition, racial discrimination in violation of California Government Code

17   section 12900 was enacted in 1980.  Taylor v. Lockheed Martin Corp., 78 Cal. App.

18   4th 472, 483 (2000).  Accordingly, Plaintiff's state law claims of race discrimination

19   in violation of California Government Code section 12900, intentional infliction of

20   emotional distress, wrongful termination in violation of public policy do  not pre-date

21   the acquisition of Naval Base San Diego by the United States and are therefore barred

22   by the federal enclave doctrine.  See Snow, 647 F. Supp. at 1521; see also Cooper v.

23   Southern Cal. Edison Co., 170 Fed. Appx. 496 (9th Cir. March 13, 2006).

24       Plaintiff argues that the federal enclave doctrine does not bar state claims which

25   are or may be covered by federal law and cites to Stiefel, 497 F. Supp. 2d at 1156-57.

26   Plaintiff misinterprets the Stiefel case.  Stiefel held that state law claims that existed

27   prior to the time the facility became a federal enclave are not barred but "become

28   ─────────────────────

that the alleged discriminatory conduct occurred on a federal enclave.

federal laws, although having their origin in the laws of the state." <u>Stiefel</u>, 497 F. Supp. at 1156-57. <u>Stiefel</u> did not hold that any state law claims created after the land became a federal enclave, can be treated as federal law. Here, all three causes of action were recognized or promulgated after 1922, the year Naval Base San Diego became a federal enclave. As one court noted when addressing a similar argument, "similarities among the federal and state laws that Plaintiff asserts are not on point. Instead, the only state laws that apply on a federal enclave are those that were enacted before the time of cessation." <u>James Stewart & Co. v. Sadrakula</u>, 309 U.S. 94, 99–100 (1940). Here, none of the three state causes of action arise under statutes enacted before 1922. See <u>Klausner v. Lucas Film</u>, 09-3502-CW, 2010 WL 1038228, at *4 (N.D. Cal. March 19, 2010).

Alternatively, Plaintiff seeks permission to amend his complaint to assert the federal cause of action equivalent for these state law claims. "A party may not amend her complaint through argument in a brief opposing summary judgment." <u>Gilmour v. Gates, McDonald and Co.</u>, 382 F.3d 1312, 1315 (11th Cir. 2004) (citing <u>Shanahan v. City of Chicago</u>, 82 F.3d 776, 781 (7th Cir. 1996)). Here, Plaintiff seeks leave to amend his complaint to add the federal law equivalent to the state causes of action barred by the federal enclave doctrine. Plaintiff may not seek leave to file an amended complaint in his opposition.

Accordingly, the Court GRANTS Defendant's motion for summary judgment as to the third claim for race discrimination under California Government Code section 12900; fourth claim for wrongful termination in violation of public policy; and ninth cause of action for intentional infliction of emotional distress.

## C. First Cause of Action - Violation of Title I of the Americans with Disabilities Act of 1990

In the second amended complaint, Plaintiff alleges that Defendant retaliated against him because he opposed its discriminatory conduct towards its disabled employees. (Dkt. No. 14, SAC ¶ 39.) He also claims that Defendant failed to

accommodate his knee injury when he was denied the ability to bring his medicine, food and water on board the ship.  (Id. ¶¶ 44, 45-46.)

Defendant moves for summary judgment on the discrimination, retaliation and wrongful termination[2] claims based on race, disability and association with gay co-workers and presumes that these causes of action require the same legal analysis under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  However, McDonnell Douglas concerns discrimination under Title VII, not the ADA.  Plaintiff's discrimination claim is alleged under Title VII and retaliation is alleged under Title I of the ADA.  The legal standards are different. In the first cause of action, Plaintiff alleges a cause of action under Title I of the ADA.

Title I of the ADA, 42 U.S.C. § 12203, provides,

> (a) Retaliation
> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
> (b) Interference, coercion, or intimidation
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203.

To establish a prima facie case of retaliation under the ADA, distinct from a cause of action of ADA discrimination, the employee must show "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two."  Alvarado v. Cajun Operating Co., 588 F.3d 1261, 1269 (9th Cir. 2009) (citing Coons v. Sec'y of U.S. Dept. of Treasury, 383 F.3d 879, 887 (9th Cir. 2004)).

Defendant fails to address the elements and supporting facts of retaliation under the ADA.  Accordingly, the Court DENIES Defendant's motion for summary judgment

---

[2]As discussed above, the wrongful termination claim is barred under the federal enclave doctrine.

1  on the Title I claim under the ADA.

2      As to discrimination under the ADA, Plaintiff claims that Defendant failed to

3  accommodate Plaintiff's knee injuries by refusing to let him bring a bag containing

4  food, water and medicine onboard the ship and cites to 42 U.S.C. § 12112.  (Dkt. No.

5  14, SAC ¶ 45.)

6      To establish a prima facie case for failure to accommodate under the ADA, a

7  plaintiff must show that "(1) he is disabled within the meaning of the ADA; (2) he is

8  a qualified individual able to perform the essential functions of the job with reasonable

9  accommodation; and (3) he suffered an adverse employment action because of his

10 disability." Allen v. Pac. Bell, 348 F.3d 1113, 1114 (9th Cir. 2003); see also 42 U.S.C.

11 § 12112(a), (b)(5)(A) (requiring reasonable accommodation).

12     Again, Defendant does not address the legal elements and supporting facts under

13 this cause of action.  Accordingly, the Court DENIES Defendant's motion for summary

14 judgment on the Title I claims under the ADA.

15 **D.    Second Cause of Action - Violation of Title VII of the Civil Rights Act of**

16 **1964**

17     Plaintiff contends that Defendant discriminated and eventually terminated

18 Plaintiff because he is Hispanic.[3]  (Dkt. No. 14, SAC ¶ 52.)  He also claims that other

19 Latino/a employees were given the hardest, most demanding and dirty jobs.  (Id.)

20 Defendant contends Plaintiff has no evidence of discriminatory motive.

21     Title VII prohibits employers from engaging in certain unlawful employment

22 practices because of an individual's race, color, religion, sex, or national origin.  42

23 U.S.C. § 2000e-2.  "In order to establish a prima facie case of discrimination, a plaintiff

24 must show (1) that he belongs to a protected class; (2) he was qualified for the position;

25 (3) he was subject to an adverse employment action; and (4) similarly situated

26 individuals outside his protected class were treated more favorably."  Leong v. Potter,

27

28     [3]The Court notes that the only allegation in the second amended complaint under Title VII is a race discrimination claim.  However, both parties discuss disability discrimination under Title VII in their briefs.

347 F.3d 1117, 1124 (9th Cir. 2003) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973)).  Once the plaintiff demonstrates a prima facie case, the burden of production shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the employment decision." <u>Id.</u> "While the burden of production shifts to the defendant, the burden of proof remains with the plaintiff at all times." <u>Id.</u> "If the employer offers a nondiscriminatory reason, the burden returns to the plaintiff to show that the articulated reason is a pretext for discrimination." <u>Id.</u>

Plaintiff claim that he falls within the protected classes of race and national origin[4] and disability status.  While Defendant raises the fact that Plaintiff identifies himself as "white, non-Hispanic" on his paperwork with Defendant and testified that his race is white but his heritage is Hispanic, it does not dispute that he falls under a protected class of race/national origin or disability.  The Court concludes that Plaintiff falls under a protected class under  race/national origin as being Hispanic and having a disability.

Second, Plaintiff was qualified for his job as he was hired and worked with Defendant for almost four years.  His performance reviews were also positive where he met and exceeded job standards.  (Dkt. No. 35-6, Ex. 5 (June 17, 2005); Dkt. No. 35-12, Ex. 11 (June 26, 2006); Dkt. No. 35-11, Ex. 10 (June 22, 2007)).   Third, Plaintiff was subject to an adverse employment action as he was fired on July 2, 2008.

The fourth factor is to determine whether there is a disputed fact that similarly situated individuals outside his protected class were treated more favorably.  Defendant argues that Plaintiff has no evidence of discriminatory motive but only alleges favoritism towards certain employees and personality conflicts.  Defendant points to specific portions of Plaintiff's deposition transcript showing that Pomrenke, Plaintiff's supervisor and other supervisors may have given favorable treatment to their friends

---

[4]Plaintiff identified his heritage as Hispanic. (Dkt. No. 32-7, Carvajal Depo. at 390:11-393:20.) He explained that people told him that Mexicans and white people are all white.  (<u>Id.</u> at 390: 13-16.)  But his heritage is Hispanic.  (<u>Id.</u> at 391:22-23.)  He stated that his mother is Mexican and his father is German, Spanish and Mexican. (<u>Id.</u> at 391:12 - 292:5.)

[10CV2319-GPC(MDD)]

but there is no evidence of racial discrimination.  (See Dkt. No. 32-7, Carvajal's Depo. at 210:6-212:11 (Plaintiff's complaint that he was not always given work when there was work and he asked for it); 212:1-5 (complaining that Pomrenke's cronies and little buddies got the work); see also 234:5-7; 236:15-20.)  In addition, Plaintiff admitted he never head Pomrenke orchestrating any harassment.  (Id. at 218:22-219:3.)  When asked, "was there anybody who ever discriminated against you based upon you being Latino?, Plaintiff answered "it's not what I think, it's what other people tell me and what we all think.  That Greg has a tendency to not like Latinos from Tijuana too much, but I don't know if that's true."  (Id. at 363:13-20.)  He also stated that when he spoke Spanish, Greg felt uncomfortable.  (Id. at 367:10-12.)  Plaintiff also admitted that he speculated that Greg may have written someone up for no reason.  (Id. at 228:21-229:21.)  Also, he speculated that Greg, Patrick and Adam would "have other workers harass you to see if they could get a reaction from you."  (Id. at 231:5-16.)  Plaintiff also stated that he "just had a feeling that Greg was somewhat racist."  (Id. at 335:9-337:3.)

        In opposition, Plaintiff must go beyond the pleadings and by a declaration, depositions, answers to interrogatories and admissions on file designate "specific facts" showing there is a genuine issue for trial.  See Celotex, 477 U.S. at 324.  As to racial or national origin discrimination, Plaintiff only provides one statement in his declaration[5] that "Latinos hung out together because we all spoke Spanish and liked the same foods . . . Many times the Latinos were left out of work when they needed us, but Greg Pomrenke would pick non-Latinos."  (Dkt. No. 35-23, Carvajal Decl. ¶ 10.)  While Plaintiff also cites to two declarations from Sofia Martinez, a former employee and John Mears, an employee of Defendant to support his allegations, these declaration

---

[5]In his brief, Plaintiff also alleges that Latinos were not given work while non-Latinos were given work and that other Latinos are afraid to come forward because they risk harassment and loss of their jobs.  These are merely allegations without any evidentiary support and may not be used to oppose a motion for summary judgment.

do not address racial, ethnic or disability discrimination.  (Dkt. Nos. 35-13; 35-17.)

Plaintiff points to cases holding that a plaintiff in an employment discrimination case need only produce very little or minimal evidence to overcome an employer's motion for summary judgment.  See Chuang v. Univ. of Calif. Davis, Bd. of Trustees, 225 F.3d 1115, 1124 (9th Cir. 2000). The evidence does not need to rise to the level of a preponderance of evidence.  Id.  However, one general statement that non-Latinos were given work over Latinos without more, is insufficient to create a triable issue of fact.  See Nelson v. Pima Comm. College, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (Mere allegation and speculation do not create a factual dispute for purposes of summary judgment).  Plaintiff has not created a triable issue of fact on the issue of racial discrimination.[6]

As to Plaintiff's claim of disability discrimination, Defendant argues that there is no claim for reverse disability discrimination.  See 42 U.S.C. § 12201(g) ("[n]othing in this chapter shall provide the basis for a claim by an individual without a disability that the individual was subject to discrimination because of the individual's lack of disability").  Plaintiff alleges animus towards individuals that did not have a disability, not those that did.  Therefore, he does not have a claim for disability discrimination. In opposition, Plaintiff's only statement that similarly situated individuals outside his protected class were treated more favorably is that other employees were allowed to have food, medication and water in their jacket pockets and he was not.  (Dkt. No. 35-23, Carvajal Decl. ¶ 19.)  Again, this is insufficient to create a triable issue of fact.  See Nelson, 83 F.3d at 1081-82.  Plaintiff does not provide specific details surrounding this general allegation.  No other declarations from current or former employees were presented and no specific deposition testimony was highlighted.  Based on what has been presented to the Court, the only incident where Plaintiff was allegedly not allowed

---

[6]While Plaintiff appears to allege a hostile work environment, there is no evidence that Plaintiff was subject to verbal or physical conduct based on his race.  See Surrell v. California Water Service Co., 518 F.3d 1097, 1108 (9th Cir. 2008).

[10CV2319-GPC(MDD)]

1   to bring his food, medication and water was on July 1, 2008 when Garvey told Plaintiff

2   that he could not carry his medicine on board the ship.   Plaintiff does not allege that

3   Garvey allowed all other non-disabled employees to take their items onto the ship.

4   Accordingly, Plaintiff has not created a triable issue of fact on the issue of disability

5   discrimination.   Accordingly, the Court GRANTS Defendant's motion to summary

6   judgment on the claim of racial and disability discrimination under Title VII.

7        Defendant also argues that even if a claim for disability discrimination was

8   made, his claim is barred by the statute of limitations.   Title VII provides that claimants

9   have ninety days to file a civil action after receipt of such notice from the EEOC.   42

10   U.S.C. § 2000e-5(f)(1).   If a claimant does not file a case within 90 days, the action is

11   time barred.   The EEOC issued a right to sue letter on August 12, 2010.   Both parties

12   agree that Plaintiff had to file a complaint by November 13, 2010 alleging violations

13   of the ADA.

14        The ninety-day period is subject to the doctrine of equitable tolling which is to

15   be applied sparingly.   Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380, 384 (9th Cir.

16   1997).   Courts are unforgiving when a late filing is due to a claimant's failure to

17   exercise due diligence in preserving his legal rights.   Scholar v. Pacific Bell, 963 F.2d

18   264, 268 (9th Cir. 1992); Banks v. Rockwell Int'l N. Amer. Aircraft Operations, 855

19   F.2d 324, 327 (6th Cir. 1988) (equitable tolling inapplicable where claimant did not

20   inform EEOC of his change of address).

21        Defendant argues that because he did not amend his complaint to include an

22   ADA claim until December 3, 2010, the ADA claim should be dismissed as untimely.

23   Plaintiff opposes.

24        In this case, Plaintiff received the EEOC letter and proceeded to file a complaint

25   in this Court alleging claims under Title VII within the 90 day period.   While the ADA

26   claim is not specifically alleged, the filing of the complaint shows due diligence by

27   Plaintiff and put Defendant on notice.   See Valenzuela v. Kraft, Inc., 801 F.2d 1170,

28   1175 (9th Cir. 1986) (tolling statute of limitations where claimant filed her action in

state court).  Plaintiff had until November 13, 2010 to file his complaint alleging an ADA violation.  On November 9, 2010, he filed a complaint alleging a Title VII cause of action.   A month later, on December 3, 2010, Plaintiff filed a first amended complaint that alleges the ADA claim.  (Dkt. No. 5.)   Accordingly, the Court concludes that equitable tolling applies and the ADA claim is not barred by the 90 day statute of limitations.

**E.     Fifth and Sixth Causes of Action - Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing**

In the Complaint, Plaintiff asserts that there was an implied contract with Defendant that they would provide a safe and legal work environment and that under this employment agreement, Defendant breached the implied covenant of good faith and fair dealing  (Dkt. No. 14, SAC ¶¶ 70-79; 81-87.)

Defendant argues that Plaintiff was an at-will employee and cannot establish either an express or implied contract.  Plaintiff opposes arguing that because Defendant is subject to the AbilityOne program established by the federal government, there is an implied contract between Plaintiff and Defendant that it will provide a workplace that follows the AbilityOne criteria.  Alternatively, Plaintiff contends, without providing any legal authority, that it is a third party beneficiary of Pride's contract with the federal government and has standing to assert a breach of contract claim against Pride. In its reply, Defendant argues that Plaintiff cannot re-write his breach of contract claim and allege something completely different from what he alleged in his SAC.

"An employment, having no specified term, may be terminated at the will of either party on notice to the other."  Cal. Labor Code § 2922.  The Sixth Circuit has held that an at-will employment agreement does not include an implied contract for the employer to provide a safe work environment.  Liaidis v. Sears, Roebuck and Co., 47 Fed. Appx. 295, 302 (6th Cir. 2002).  The Court agrees.

Plaintiff does not dispute that he was an "at will employee."  This fact, along with the statutory presumption of at-will employment satisfies Defendant's initial

burden in moving for summary judgment.  See Guz v. Betchtel Nat'l Inc., 24 Cal. 4th 317, 339 (2000).  The burden shifts to Plaintiff to raise a triable issue that his employment was not at-will, or that it was a third-party beneficiary to the contract between Defendant and the federal government.

Plaintiff argues that it is a third-party beneficiary to the contract between Defendant and the federal government.  First, this allegation is not addressed in the second amended complaint.  Second, Plaintiff provides no legal support for his argument. Lastly, even if the Court were to consider Plaintiff's third-party beneficiary argument, it fails.

A non-party to a contract can enforce the contract only if the contract reflects a clear promissory intent to benefit the third party.  Kremen v. Cohen, 337 F.3d 1024, 1029 (9th Cir. 2003).  "The intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended by the parties to benefit from the contract." Id. (quotation omitted).  However, when one of the contracting parties is a governmental entity, a "more stringent test applies." Id.

Third party beneficiaries are presumptively incidental beneficiaries who may not enforce the contract "absent a clear intent to the contrary." Orff v. United States, 358 F.3d 1137, 1145 (9th Cir. 2004) (emphasis and quotation omitted).  The contract must establish both an intent to confer a benefit on the third party, as well as an intent to grant the third party "enforceable rights." Id. (quotation omitted).

Plaintiff has not shown a "clear intent" that he was the intended third-party beneficiary to enforce provisions of the contract.  See Orff, 358 F.3d at 1145. Accordingly, the Court GRANTS Defendant's motion for summary judgment on the breach of contract claim.

A "claim for breach of an implied good faith covenant depends upon the existence of a valid contract." Stanley v. Univ. of S. Cal., 178 F.3d 1069, 1078 (9th Cir. 1999) (citing Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371 (1990)).  Accordingly, the Court also GRANTS Defendant's motion for summary

[10CV2319-GPC(MDD)]

judgment as to the breach of an implied covenant of good faith and fair dealing.

**F.      Seventh Cause of Action - Negligence**

The second amended complaint alleges that Defendant had a duty to provide a legal and safe work environment for its employees, that Defendant knew Plaintiff suffered from knee problems, and refused to provide a safe and legal work place. (Dkt. No. 14, SAC ¶¶ 89-96.)  Defendant contends that the negligence claim fails as it is barred by Workers' Compensation, which provides the exclusive remedy for injuries caused by an employer's negligence.  Plaintiff asserts that a negligence claim is still viable under federal law and that Defendant failed to meet its initial burden on summary judgment as it failed to address the federal counterpart of the negligence claim.

Claims of negligence arising from conduct occurring in the course of employment are within the exclusive remedy provisions of the California Workers' Compensation Act.  <u>Vuillemainroy v. American Rock & Asphalt</u>, 70 Cal. App. 4th 1280, 1284 (1999); <u>Coit Drapery Cleaners v. Sequoia Ins. Co.</u>, 14 Cal. App. 4th 1595, 1605 (1993).

Plaintiff alleges negligence based on conduct that occurred while employed by Defendant.   While Plaintiff argues that the negligence claim is viable under federal law, he has not made such an allegation in the second amended complaint.  As a matter of law, the Court GRANTS Defendant's motion for summary judgment on the negligence claim.

**G.      Eighth Cause of Action - Defamation/Slander *Per Se***

Plaintiff complains that Pride managers made false statements that Plaintiff is a "fag" and a "queer." (Dkt. No. 14, SAC ¶¶ 98-100.) He contends that these statement were made to cause Plaintiff mental anguish to harass Plaintiff for disclosing or complaining about Defendant's illegal conduct.

Slander is a false and unprivileged publication, orally uttered, which either (1) tends directly to injure [plaintiff] "in respect to his office, profession, trade or business,

either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits" or (2) "by natural consequence, causes actual damage." <u>Moranville v. Aletto</u>, 153 Cal. App. 2d 667, 672 (1957); Cal. Civil Code § 46.  A statement constitutes slander *per se* when it is made that makes charges as to any of the four specific categories listed and requires no proof of actual damages.  <u>Duste v Chevron Prods. Co.</u>, 738 F. Supp. 2d 1027, 1044 (N.D. Cal. 2010).

Defamation is an invasion of the interest in reputation. The tort involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage.  Cal. Civ. Code § 45; <u>see also</u> <u>Smith v. Maldonado</u>, 72 Cal. App. 4th 637, 645 (1999).

A court has held that statements falsely imputing homosexuality are not slander *per se.*  <u>Yonaty v. Mincolla</u>, 945 N.Y.S. 2d 774, 779 (App. Div. 2012).  In addition, one district court in California held that a statement about plaintiff's homosexuality is not slander *per se* and requires a showing of actual damages.  <u>Greenly v. Sara Lee Corp.</u>, 2008 WL 1925230, *8 (E.D. Cal. Apr. 30, 2008).[7]

---

[7] In a footnote, the court in <u>Greenly</u> explained,

The majority of the courts that have previously found an accusation of homosexuality to be slander per se emphasized the fact that such a statement imputed criminal conduct. <u>See, e.g.</u>, Plumley v. Landmark Chevrolet, 122 F.3d 308, 310-11 (5th Cir. 1997). The United States Supreme Court effectively extinguished this rationale in <u>Lawrence v. Texas</u>, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), where the Court held a Texas statute criminalizing same-sex sexual conduct was unconstitutional under the Due Process Clause because individuals have a "right of privacy" to engage in sexual acts in their homes. <u>Id.</u> at 574-75.  The court also found that precedent to the contrary "demeans the lives of homosexual persons." <u>Id.</u> at 575.  This court acknowledges that "[c]ontinuing to characterize the identification of someone as a homosexual [to be] defamation per se has the same effect." <u>Albright v. Morton</u>, 321 F. Supp. 2d 130, 137 (D. Mass. 2004).

<u>Greenly</u>, 2008 WL 1925239 at *8.

[10CV2319-GPC(MDD)]

Here, Defendant argues that statements that falsely impute that one is a homosexual is not defamation per se and other statements Plaintiff allege are defamatory are speculative without any supporting evidence. In opposition, Plaintiff does not dispute Defendant's argument with triable issues of fact that a slanderous or defamatory statement was made. Plaintiff merely argues that damages for defamation per se are presumed and evidence of special damages is not required. Plaintiff has failed to bear its burden to demonstrate a triable issue of fact. See Celotex, 477 U.S. at 324. Accordingly, the Court GRANTS Defendant's motion for summary judgment on the eighth cause of action for defamation/slander *per se.*

**H.    Request for Judicial Notice**

Defendant filed a request for judicial notice of General Order No. 78 of the Navy Department, and Statutes of California, Stats. 1919, ch. 83, 4 showing that Naval Base San Diego, formerly known as The Destroyer Base, is a federal enclave. (Dkt. No. 32-3.) Since Plaintiff does not oppose the request and the matter is appropriate for judicial notice, the Court GRANTS Defendant's request for judicial notice.

**I.    Evidentiary Objections**

As part of its opposition, Defendant filed evidentiary objections to Plaintiff's declaration. (Dkt. No. 37-1.) The Court notes Plaintiffs' objections. To the extent that the evidence is proper under the Federal Rules of Evidence, the Court considered the evidence. To the extent that the evidence is not proper, the Court did not consider them.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

**Conclusion**

Based on the above the Court GRANTS in part and DENIES Defendant's motion for summary judgment.   Specifically, the Court DENIES Defendant's motion for summary judgment as to the first cause of action for violation of Title I of the ADA and GRANTS Defendant's motion for summary judgment as to all the remaining causes of action.

IT IS SO ORDERED.


DATED:  April 22, 2013

HON. GONZALO P. CURIEL
United States District Judge