1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

CEZAR CARVAJAL,

CASE NO. 10CV2319-GPC(MDD)

11

Plaintiff,

**MEMORANDUM DECISION FOLLOWING TRIAL AND ORDER FOR ENTRY OF JUDGMENT**

12

vs.

13

PRIDE INDUSTRIES, INC.;
DOES 1-10,

14

Defendants.

15
16

Plaintiff Cezar Carvajal brings this action on his remaining cause of action in the

17

second amended complaint[1] alleging retaliation under Title I of the Americans with

18

Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12203 against his former employer,

19

Defendant Pride Industries, Inc. ("Pride"). (Dkt. No. 14.)  The Court held a bench trial

20
21
22

[1]The operative second amended complaint contained nine causes of action

23

against Defendant alleging:
1) Violation of Title I of the Americans with Disabilities Act of 1990 ("ADA");
2) Violation of Title VII of the Civil Rights Act of 1964("Title VII");

24

3) Race Discrimination in Violation of California Government Code section 12900, *et seq.*;

25

4) Wrongful Termination in Violation of Public Policy;
5) Breach of Contract;

26

6) Breach of Implied Covenant of Good Faith and Fair Dealing;
7) Negligence;

27

8) Defamation/Slander Per Se; and
9) Intentional Infliction of Emotional Distress. (Dkt. No. 14.) On April 22, 2013, the

28

Court granted Defendant's motion for summary judgment on all causes of action except
for the ADA cause of action.  (Dkt. No. 42.)

on April 21 and 22, 2014.[2]  (Dkt. Nos. 133, 135.)  Kevin Mirch, Esq., Marie Mirch, Esq. and Erin Elizabeth Hanson, Esq. appeared on behalf of Plaintiff and Erin Denniston, Esq. and Christy D. Joseph, Esq. appeared on behalf of Defendant.

Having carefully reviewed the evidence and the arguments of the parties, as presented at trial, and in their written submissions, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.  As discussed below, the Court finds that Plaintiff failed to show, by a preponderance of the evidence, that Defendant retaliated against him in violation of the Americans with Disabilities Act ("ADA").

## **FINDINGS OF FACT**

In September 2004, Plaintiff was hired by Pride as a laborer and was employed until his termination on July 3, 2008, nearly four years later.  While employed at Pride, Carvajal worked in a Navy shipyard loading and unloading cargo on various Navy ships.

Pride was created to help people with disabilities obtain jobs.  In order to maintain its federal contracts with the military loading and unloading ships, Pride is required to maintain a ratio where 75% of employees have a documented disability. Carvajal was not hired as a disabled person.

In September 2007, due to knee pain, Plaintiff presented a doctor's note to Gregory Pomrenke, the supervisor/project manager at Pride. Pomrenke testified he had a good working relationship with Plaintiff.  The doctor's note indicated Plaintiff needed x-rays and restricted Plaintiff from climbing ladders and from prolonged walking.  (Jt. Ex. 50 at 050-002.)  Pomrenke explained that ladders on ships are more like narrow stairways.  Although Plaintiff did not have a documented disability, Pomrenke testified that he accommodated Plaintiff anyway and that Plaintiff did not have to climb ladders again. Pomrenke did not explain how he memorialized the

---

[2]The Court held a jury trial on April 16, 17, and 21, 2014 on Plaintiff's cause of action for failure to accommodate under the ADA. (Dkt. Nos. 124, 125, 129.)  The jury found in favor of Defendant.  (Dkt. No. 138.)

accommodation or whether he communicated the accommodation to any of Plaintiff's supervisors.

According to Navy security policy, any food or medicine had to be placed in an employee's pocket or in a clear bag when on board the ships. Plaintiff was aware of this rule and knew he was allowed to go on the ship when he put medicine in his pocket but would not be allowed on the ship if the medicine was in his hands.

On July 1, 2008, Patrick Garvey, the Dock Lead, was in charge of the employees at the shipyard, including Plaintiff. The Dock Lead gives instructions to the employees regarding their work for the day. Garvey stated that he was not aware that Plaintiff had a knee problem or that he needed accommodations. He stated that Plaintiff never told him that he was not required to work on the ladders or that he needed to take medicine on board the ships as an accommodation. In addition, Garvey stated that he never forced Plaintiff to work on the ladders.

On July 1, 2008, while on the job, Carvajal attempted to bring a pink canvas bag on board a Navy ship. Garvey instructed Plaintiff to leave his bag in the van due to security reasons, and the fact that the job would only take 45 minutes but Plaintiff refused. Garvey then called Adam Noble, the Dock Supervisor, to inform him about what happened and Noble told Garvey to tell Plaintiff to leave his bag in the van or go home. Garvey did so and instead of following the instruction, Plaintiff said "fuck you" to Garvey two times. Garvey again called Noble to tell him what happened and Noble told Garvey to send Plaintiff to Building 3419. Garvey said that he would have allowed Plaintiff to carry medicine onto the ships if it was in his pockets. At Building 3419, Pomrenke saw Plaintiff and noticed that Plaintiff's canvas bag had a drink and aspirin. Pomrenke told Plaintiff that he would be off of work for three days pending an investigation. These facts were corroborated by Garvey, Noble and Pomrenke.

According to Plaintiff, on July 1, 2008, when Garvey told him that he could not bring his canvas bag on the ship, Plaintiff agreed and said he would put his medicine in his pocket; however, Garvey grew very angry and instructed Carvajal to go home.

1  Plaintiff admitted that he said "fuck you" to Garvey.  No other witnesses testified to
2  support Plaintiff's version of the facts.  After an investigation, Carvajal was terminated
3  for insubordination on July 3, 2008 as a result of his conduct.

4  Plaintiff's managers, including Greg Pomrenke, consistently rated Plaintiff's job
5  performance as "meets and exceeds job standards" for evaluations conducted on June
6  17, 2005, June 26, 2006 and June 22, 2007.  (Jt. Exs. 9, 10, 11.) Pride stopped
7  conducting job performance evaluations after 2007.  In 2008, Plaintiff started to receive
8  disciplinary write-ups titled "Employee Performance Counseling."  On February 11,
9  2008, Plaintiff received a "verbal warning"[3] for a safety violation for not wearing a
10  safety helmet on a pier.  (Jt. Ex. 12.)  Then, on February 20, 2008, he received a
11  "written warning" for a safety violation and for failure to follow instructions for not
12  wearing a safety helmet on board the Boxer aircraft carrier.  (Jt. Ex. 13.)  Two months
13  later, on April 17, 2008, he received another "written warning" for a safety violation
14  and for failure to follow instructions for failure to wear a safety helmet on the pier.  (Jt.
15  Ex. 14.) On April 18, 2008, he received a final written warning for insubordination and
16  failure to follow instructions.  (Jt. Ex. 15.)  On this incident, Plaintiff disrupted the
17  evolution and failed to listen to the instructions of Garvey, and Plaintiff stated the
18  Garvey was "fucked up" in the head.  (Jt. Ex. 15.)  While Plaintiff signed off on the
19  first two warnings, he refused to sign the April 17 and 18, 2008 warnings and did not
20  write any comments under "Employee Comments."  (Jt. Exs. 14, 15.)  Plaintiff
21  explained that he did not sign the warnings and disagreed with the allegations because
22  he never had any disciplinary problems before 2008.

23  On July 1, 2008, Plaintiff received his final written warning for failure to follow
24  instructions and insubordination for failing to follow instructions concerning leaving
25  a bag in the van.  (Jt. Ex. 16.)  The Employee Performance Counseling states:

26  Supervisor gave you instructions about not taking an Item on the ship
   you said (NO) You need to follow instructions.  Your are off for three
27

28  ─────────────
   [3]Although labeled "verbal warning", this first level of violation was written on
   the Employee Performance Counseling form.

1
2
3
4
5
6
7
8

days pending investigation.  On 7-1-08 about 0645 at Pier 3 Entrance I Patrick Garvey told Cesar Carvajal to leave all bags in the van that he wouldn't need them.  He said Greg told him he could bring his lunch on board.  I Patrick Garvey told him he wouldn't need his lunch at this time.  The crew wouldn't be there that long to eat his lunch.  He refused to leave his bag in the van.  Cesar Carvajal refused to follow instructions.  I told Cesar Carvajal to wait at the entrance to pier 3.  I Patrick Garvey told him I was going to call Adam Noble.  Cesar Carvajal said I was making my own rules up.  I Patrick Garvey called Adam Noble and explained the situation to Adam Noble.  Adam Noble told me Patrick Garvey to tell Cesar Carvajal to leave his bag in the van or go home.  Cesar Carvajal told me Fuck you.  I then called Adam Noble told him what Cesar Carvajal said.  Adam Noble then told me Patrick Garvey to send Cesar Carvajal to 3419.

9  (Jt. Ex. 16.)  On each Employee Performance Counseling form is a place for employee

10  comments.  Plaintiff did not fill out the employee comment section on the first four

11  write ups.  However, on the July 1, 2008 form, Plaintiff wrote, "Patrick is unstable and

12  He Does Not consider things get stolen from VAN."  (Id.)  After an investigation,

13  Plaintiff was terminated on July 3, 2008.

14  Rudy Moreno-Gastelum, a fellow employee when Plaintiff worked at Pride,

15  testified for Plaintiff but his testimony was limited and did not support Plaintiff's facts.

16  Rudy testified that Plaintiff complained to him about conditions at Pride and how

17  Garvey would push and hit Plaintiff but Rudy never saw this.  He also testified that

18  Plaintiff helped him get unemployment benefits and with his status of being disabled.

19  John Mears, another fellow employee when Plaintiff worked at Pride, also

20  testified for Plaintiff.  Mears was not disabled and not a Spanish speaker.  He testified

21  that there was conflict between Plaintiff and Garvey and they would argue.  He stated

22  that employees were written up for not wearing their helmets.  Towards the end of

23  Plaintiff's employment at Pride, Mears was not working with Plaintiff so he was not

24  aware if Plaintiff was working ladders.  Plaintiff spoke Spanish to other employees so

25  Mears did not know if he was helping them but he knew Plaintiff helped Rudy with

26  providing information about the Epileptic Society.  Plaintiff complained that employees

27  were not being treated properly.  Mears was not present at the incident on July 1, 2008.

28  Mears stated that the ratio was the driving force of conflict between the non-disabled,

[10CV2319-GPC(MDD)]

disabled and management.  The ratio made Plaintiff unhappy.

Plaintiff testified that he started getting write-ups in retaliation for seeking his own accommodation and assisting other disabled employees in learning about their ADA rights.  He stated that while many others took off their helmets on the pier, he was the only one who was written up.  He believed that Defendant was purposely harassing him and forcing him to leave.  He also testified that he was made to do ladder work when there were not enough healthy workers to do the ladder jobs; however, Plaintiff did not state the time period he was required to do ladder work.  He testified that towards the end of his employment, he was taken off certain ladders but would work certain ladders with modification where he could sit down, or place his foot on pipes to pass boxes.

Adam Noble, the Dock Supervisor, was in charge of the Leads.  He did the disciplinary write-ups and talked to Plaintiff about the write-ups and Pride's policy on safety.  Noble testified that he was not aware of Plaintiff's ladder accommodation.  He stated that he did not know or was not aware that Plaintiff complained on behalf of himself or others about not getting breaks, that Plaintiff was unable to take medication, and that Plaintiff was not being accommodated.  He stated that he never heard that Plaintiff taught employee Rodolfo Moreno-Gastelum how to get his ADA rights.

Plaintiff testified that Pomrenke asked him to come up with a mental disability so that Carvajal would qualify as a disabled employee.  Plaintiff refused to submit false information that he had a mental disability in order to qualify as a disabled employee.  As a result, Plaintiff believes he was retaliated against for refusing to come up with a mental disability.  Plaintiff also testified that Pride did not like the fact that he was receiving unemployment and helping others obtain unemployment while not working at Pride.

Plaintiff testified that he informed Jennifer Young in Human Resources ("HR") at Pride about how Pride was not handling disabled employees properly under the ADA.  He states that after he told Young, then Noble, Garvey and everyone, started

[10CV2319-GPC(MDD)]

cutting his hours, sending him home and writing him up.  Plaintiff states that he complained to Pride management about the fact that disabled people were losing hours in late 2007.[4]  After he complained, he states that Pride started to cut his hours a lot and he started receiving write ups.  He alleges that Pride retaliated against him for advocating for himself and for other employees with disabilities.

Pomrenke noted that Plaintiff's biggest complaint while working at Pride was the lack of hours he was receiving.  However, Pomrenke testified that Pride was bound to maintain a 75% ratio of disabled employees.   Because Plaintiff complained about the lack of hours he was working, Pomrenke told Plaintiff to fill out a form in order to get his knee injury documented as a disability so that he could receive more hours.  Pomrenke testified that he does not recall if Plaintiff advocated for the rights of other disabled employees and stated there were no complaints that Plaintiff was helping Spanish speaking employees at Pride for ADA accommodations.  While there were complaints about not getting breaks, Plaintiff did not make these complaints for others, and Rudy testified that he does not remember Plaintiff helping him to obtain breaks at Pride.

## CONCLUSIONS OF LAW

The ADA prohibits an employer from retaliating against an employee for engaging in protected conduct.[5]  42 U.S.C. § 12203(a).  Plaintiff must show, by a

---

[4]Plaintiff also stated that Pride was improperly employing people from the prison, claiming they were disabled, when in fact, they were not.  This was based on what the prison people told him.  As a result of Pride using these people from the prison, the truly disabled people were given less hours.  The Court cannot rely on these facts because these statements are based on hearsay.

[5](a) Retaliation

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation

1  preponderance of the evidence, that 1) he was engaged in protected conduct; 2) he was
2  subject to an adverse employment action; and 3) a causal link between the protected
3  activity and the adverse employment action.  Alvarado v. Cajun Operating Co., 588
4  F.3d 1261, 1269 (9th Cir. 2009) (citing Coons v. Sec'y of U.S. Dept. Of Treasury, 383
5  F.3d 879, 887 (9th Cir. 2004)).  The Ninth Circuit has recognized that the Title VII
6  retaliation analytical framework is also used for the ADA.  Barnett v. U.S. Air, Inc.,
7  228 F.3d 1105, 1121 (9th Cir. 2000) (en banc) ("Therefore, we join our sister circuits
8  in adopting the Title VII retaliation framework for ADA retaliation claims") vacated
9  on other grounds, 533 U.S. 391 (2002); see also Pardi v. Kaiser Foundation Hospitals,
10  389 F.3d 840, 850 n. 5 (9th Cir. 2004).

11  **A.  Protected Activity**

12  Plaintiff alleges that he engaged in protected activities when he requested
13  accommodations for his knee injury; aided and encouraged other employees to exercise
14  their legal rights under the ADA; and when he sought unemployment benefits for
15  himself and assisted others with seeking unemployment benefits.

16  Pursuing one's rights under the ADA constitutes a protected activity. Pardi v.
17  Kaiser Fdn. Hosps., 389 F.3d 840, 850 (2004).  Therefore, Plaintiff's request for
18  reasonable accommodations for his knee is a protected activity.  See Coons, 383 F.3d
19  at 887 (plaintiff was engaged in protected activity when he requested reasonable
20  accommodations for his alleged disability); see also Standard v. A.B.E.L. Servs., Inc.,
21  161 F.3d 1318, 1328 (11th Cir. 1998) (plaintiff's request for accommodation for back
22  injury constitute protected activity under the ADA).  In addition, Plaintiff's acts of
23  advocating and assisting disabled employees are also considered a protected activities.

24

25  It shall be unlawful to coerce, intimidate, threaten, or interfere with
26  any individual in the exercise or enjoyment of, or on account of his or
   her having exercised or enjoyed, or on account of his or her having
27  aided or encouraged any other individual in the exercise or enjoyment
   of, any right granted or protected by this chapter.
28  42 U.S.C. § 12203.

See Ray v. Hendersen, 217 F.3d 1234, 1240 n. 3 (9th Cir. 2000) ("[A]n employee's complaints about the treatment of others is considered a protected activity.")  While Plaintiff alleges advocating for the rights of numerous disabled employees, at trial, Plaintiff only specifically testified how he assisted two fellow employees.  First, he explained that he assisted Rudy, an epileptic employee, learn about his disability by giving him information about the Epileptic Society.  Plaintiff also accompanied Rudy to the Epilepsy Society to obtain a letter from the director explaining epilepsy that was later presented to Pride.  Second, Plaintiff stated that he assisted Elvia, an employee with lung problems, by telling her to obtain a doctor's note so that she could be exempt from the freezer.  The Court concludes that these acts by Plaintiff constitute protected activity.

However, Plaintiff's collection of unemployment when Pride did not have enough work for him during a pay period and assisting fellow employees with filling out forms to obtain unemployment do not constitute protected activities under the ADA.  See Dugay v. Complete Skycap Servs., Inc., No. CV 10-2404-PHX-GMS, 2011 WL 3159171 (D. Az. July 26, 2011) (filing unemployment benefits does not fall within the protections of the ADA and therefore, is not considered protected activity under the ADA).

**B.    Adverse Employment Action**

The Ninth Circuit takes a broad view of what constitutes an adverse employment action.  See Pardi v. Kaiser Fdn. Hosps., 389 F.3d 840, 850 (9th Cir. 2004) (citing Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000)).  An adverse employment action is any action "reasonably likely to deter employees from engaging in protected activity." Ray, 217 F.3d at 1243.  Adverse employment decisions include actions that materially affect compensation, terms, condition or privileges of employment.  Little v. Windermere Relocation, Inc., 301 F.3d 958, 970 (9th Cir. 2002). "Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an

undeserved negative performance review and refusal to consider for promotion. By contrast, we have held that declining to hold a job open for an employee and badmouthing an employee outside the job reference context do not constitute adverse employment actions." Brooks v. City of San Mateo, 229 F.3d 917, 928-29 (9th Cir. 2000); Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) ("Transfers of job duties and undeserved performance ratings, if proven, would constitute 'adverse employment decisions' cognizable under [Title VII]."

Plaintiff states the following adverse actions were taken against him: he was not allowed to bring medicine and water on board the ship, he was forced to work on ladders and steps, Defendant created false disciplinary reports and he was ultimately terminated. These allegations constitute adverse employment actions as these acts will likely deter employees from engaging in the protected activity.[6] See Ray, 217 F.3d at 1243. At trial, Plaintiff also testified his working hours were reduced in retaliation for complaining about the rights of others. Contrary to Plaintiff's allegation, the evidence at trial showed that Plaintiff's working hours were not reduced during this time period. (Jt. Ex. 25.)

**C.   Causation**

Plaintiff must show by a preponderance of the evidence that the adverse employment actions would not have occurred in the absence of the protected activities.

Under the standard before Nassar,[7] Plaintiff had to show that engaging in the protected activity must have been a "motivating factor" in the adverse employment action. Head v. Glacier Northwest, Inc., 413 F.3d 1053, 1065 (9th Cir. 2005). Recently, in University of Texas Southwestern Medical Ctr. v. Nassar, 133 S. Ct. 2517

---

[6]Plaintiff also alleges that he was forced to work in a large freezer for an extended period of time; however, at trial, there was no evidence presented concerning Plaintiff being forced to work in the freezer. In addition, Plaintiff generally alleges that he was refused his request to get his jacket without providing the who, what, when, where and how he was refused his jacket at trial. Therefore, they cannot be considered adverse actions.

[7]Univ. of Texas Southwestern Medical Ctr. v. Nassar, 133 S. Ct. 2517 (2013).

(2013), the United States Supreme Court held that Title VII retaliation claims "must be proved according to the traditional principles of but-for causation." Id. at 2533.  Under this heightened standard, a plaintiff must show that the "unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  Id.  District courts have held that Nassar's but-for causation standard in Title VII cases applies to ADA retaliation claims.  See Gallagher v. San Diego Unified Port Dist., –F. Supp. 2d –, 2014 WL 1455961 (S.D. Cal. Apr. 14,  2014); Brooks v. Capistrano Unified Sch. Dist., 2014 WL 794581, at *6 (C.D. Cal. Feb.20, 2014) ("This Court sees no principled reason why Title VII retaliation claims are subject to the but-for causation standard while the lesser 'motivating factor' causation would apply to retaliation claims brought under other statutes."); Doan v. San Ramon Valley Sch. Dist., 2014 WL 296861, at *3 (N.D. Cal. Jan.27, 2014) (requiring a but-for causal link between the protected activity and the adverse employment action because "ADA retaliation claims are subject to the same framework of analysis as that of Title VII."); EEOC v. Evergreen Alliance Golf Ltd., No. CV 11-662-PHX-JAT, 2013 WL 4478870, at *11 (D. Ariz. Aug. 21, 2013) ("Retaliation claims require proof by a preponderance of the evidence that the adverse employment claims require proof that the adverse employment action would not have occurred in the absence of the protected activity."); but see Siring v. Oregon State Bd. of Higher Educ ex rel., – F. Supp. 2d –, 2013 WL 5636718, at *3 (D. Or. Oct. 15, 2013) (applying "motivating factor" causation standard rather the "but-for" standard under ADA retaliation claim).

Causation "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1035 (9th Cir. 2006).  An employer's awareness is essential to showing a causal link. Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982).  The Court need not decide which causation standard applies because under either standard, Plaintiff falls short.

[10CV2319-GPC(MDD)]

Here, Plaintiff received positive reviews of his work in 2007; however, after a doctor's note was presented in September 2007 seeking accommodations and when Plaintiff started advocating for the rights of other disabled employees in late 2007, Plaintiff began to receive write-ups in early 2008. While the proximity of time between the protected activity and the adverse employment action is curious and raises a question as to whether there is causation, Plaintiff has failed to demonstrate, by a preponderance of the evidence, that Defendant was aware of Plaintiff's protected activities to establish causation.

The Court concludes that Plaintiff's request for accommodations was not the but-for cause or the motivating factor in Defendant's decision to terminate him, to create false disciplinary reports, to deny him medicine and water on the ship, and to force him to work on ladders and steps. Plaintiff must show that these adverse actions were the result of his request for accommodations. He must show that the Garvey and Noble, the men responsible for the employees at the job site and responsible for these adverse actions, knew about Plaintiff's request for accommodations. Plaintiff has failed to make the requisite showing.

Plaintiff agrees that Garvey and Noble did not know about Plaintiff's doctor's note and his request for accommodations. Plaintiff did not inform them of his request for accommodations and his restriction from climbing ladders. Additionally, neither Pomrenke or Plaintiff ever told Garvey or Noble that Pomrenke had granted Plaintiff's request for accommodations for his knee condition. Since Garvey and Noble did not know about Plaintiff's knee accommodations, the alleged adverse actions taken by Garvey and Noble cannot be based on Plaintiff's request for accommodations. At no time during the July 1 incident with Garvey did Carvajal tell Garvey that he needed to take his bag or any of the contents of his bag on board the ship as an accommodation for any alleged disability. Therefore, the fact that he was allegedly denied the ability to bring medicine and water onboard the ship, that he was allegedly forced to work on ladders and steps, that Defendant allegedly created false disciplinary reports, and that

[10CV2319-GPC(MDD)]

1  Plaintiff was finally terminated was not as a result of Plaintiff engaging in the protected
2  activity of requesting accommodations for his knee injury.  Accordingly, Plaintiff has
3  failed to show that his request for accommodations was the but-for cause or the
4  motivating factor for the adverse actions.

5      The Court also concludes that Plaintiff's assistance to Rudy concerning the
6  Epileptic Center, and Evia, concerning the freezer, was not the but-for cause or
7  "motivating factor" of Defendant's adverse employment actions. Nobody testified that
8  management or Garvey or Noble knew about Plaintiff's assistance to Rudy or to Elvia.
9  While Plaintiff testified that he encouraged fellow employees to go to the Department
10  of Labor or California Disability office, there was no corroboration by other witnesses.
11  Moreover, there was no evidence that Pride management knew about these actions.
12  While he states that he told Jennifer Young in HR, Young was not called to testify at
13  trial.

14      Evidence at trial showed that Plaintiff was allowed to bring in medicine and
15  water so long as they were in a clear plastic bag or in his pocket due to security
16  guidelines imposed by the Navy.  On July 1, 2008, Plaintiff's medicine and water was
17  in a pink canvas bag, and not a clear bag or in his pockets.  In addition, evidence did
18  not show that Plaintiff was forced to work on ladders and steps, or that if he was forced
19  he then informed the supervisor at the job site about his accommodation by Pomrenke.
20   Plaintiff also did not demonstrate, by a preponderance of the evidence, that Defendant
21  created false disciplinary reports.  While Plaintiff testified that he was singled out for
22  not wearing his helmet on the pier as everyone else, no other witnesses testified to this.
23  In fact, Mears testified that employees were written up for not wearing their helmets.
24  Plaintiff's termination based on insubordination is supported by the facts surrounding
25  the incident on July 1, 2008.

26      The Court notes that many factors were in play at the worksite when Plaintiff
27  was employed at Pride and later terminated.  Based on the testimony of witnesses, the
28  ratio was a driving force of conflict between the non-disabled employees, disabled

[10CV2319-GPC(MDD)]

employees and management.  The only reason Plaintiff's hours would have ever been decreased was because he was not documented as disabled and Pride had to keep the 75% ratio.   Plaintiff constantly complained about the lack of hours.   Moreover, personality conflict between Patrick Garvey and Plaintiff created tension between the two of them.  Mears and Pomrenke both testified to their conflict.  In addition, Plaintiff, himself, started to voice his displeasure at Pride in June 2007.  (Jt. Ex. 11.)   In his Employee Performance Appraisal, he wrote "Better Pay 4 <u>Harder</u> <u>workers</u> & <u>less pay</u> 4 Lazy people we should have a Rateing (sic) system - the current system is Bullshit." (Jt. Ex. 11 at 011-002.)  In that evaluation, the development plan also stated that one of Plaintiff's weaknesses was "Complaint to (sic) much from time to time."  (Jt. Ex. 11 at 011-007.)  Employee's goal is to "try to control your opinions, not everyone wants to hear it" and objective to accomplish these goals is "Think about the people around you, not everyone is outgoing as you."  (Jt. Ex. 11.)  Therefore, a combination of these factors caused Plaintiff to become dissatisfied with working at Pride.   Pomrenke testified that at the end of 2007, Plaintiff always wanted to go against the system and all the supervisors had trouble with him and he never was able to take orders.  While adverse employment actions were taken against him, Plaintiff has not demonstrated, by a preponderance of the evidence, that it was due to retaliation for protected activities under the ADA.

### Conclusion

Based on the above, judgment is entered in favor of Defendant and against Plaintiff.  The Clerk of Court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED:  May 13, 2014

HON. GONZALO P. CURIEL
United States District Judge

[10CV2319-GPC(MDD)]